Mr. Poston let's uh let's hear your side of it. My side of it? Yes sir. Just a second. Typical computer problems here. Okay. May it please the court. My name is of course Eric Poston. I'm counsel for the plaintiff appellant Hannah Robertson individually and also on behalf of her 11-year-old daughter named Rumer. And she was the author of the essay on LGBTQ rights that Anderson Mills Elementary School in Spartanburg County decided not to publish due to the principal's unilateral decision and from her remarks it can be deduced that the support the essay is 100 words and it's mostly all about treating people equally but there's one line in there that says people need to treat transgenders and people that dress like women differently. You know they're different than us. We need to love them and treat them equally. Mr. Poston this is Judge Thacker. Do you agree that Hazelwood applies to this case? Hazelwood does not apply to this case. Why not? Because the Hazelwood court when they were you know they were looking at school sponsored events so you know I'll just draw no distinction between that and a in classroom event because the court does the same. Okay well assuming we think that Hazelwood does apply how is the restriction on the speech here not serving a valid educational purpose? So the Hazelwood court says right so there has to be no educational purpose to the essay. The no to the okay go ahead. I'm sorry the censorship has to have no valid or I'm sorry let me try it again. Basically there needed to be a legitimate or a valid educational reason that to censor an essay like this and the thing about this essay is it the whole design of the essay was that all of her classmates write these open essays that would be sort of you know sent into the future and the idea was write about what you think people in the future should know. And so the entire essay was her except that it was being published now in the present and the principal found or felt that it was inappropriate for students in the fourth grade to be reading as part of the publication of all the essays. So could the principal not make that determination? She shouldn't she's not the teacher who made the assignment you know I just you know she the problem with the whole problem with this case is first of all it's political so we've already made our minds up for the most part and but but second of all it's it's it's just it was dismissed so quickly that you know there was no discovery no depositions no anything. Can I ask you another question Mr. Poston? I may have I seem to recall somewhere in the and offered to put both essays the first one that the student wrote and then the second one that the student wrote offered to put both essays in the publication but the parents declined. Is that the case? That is so they violated. So why isn't this case moot? Because they violated her constitutional rights which you know I've heard talk about you know that what is the value of violating you know someone's first what is the monetary value of violating someone's first amendment rights and you know I hear people say it's hard to put a number on but what it is for certain is that you can't unviolate the right. I can't you know if I had a magazine and you know I said you know anyone who wants to speak about their favorite kind of tree and you submitted an article to me about your favorite kind of tree and that was a little bit ridiculous but and I denied it. My favorite what? An article about what? Your favorite tree or oh favorite tree I'm just a plant. I'm trying to plant right and because it's easier to explain it this way than through the interest and then through the case the case subject matter but once I look at your article I say well you know I hate that I hate that for whatever reason I just really don't you know my deceased father whatever reason and I refuse to publish it and then I get sued and then I say okay I'll publish it. Mr. Poston how far does your rationale go and I've there's a particular line from Hazelwood that strikes me as relevant it says the court says a school must retain the authority to refuse to sponsor student speech that might reasonably be perceived to advocate drug or alcohol use irresponsible sex or conduct otherwise inconsistent with the shared values of a civilized social order and if every time a teacher says that a discussion of a particular topic is simply age inappropriate and it's important here that this is a fourth grade class we're talking about if any time a teacher decides that a particular discussion is just not appropriate or out of bounds and all of it is within the context of the curriculum and the student and the parents are going to haul the teacher into court in a suit for damages that just seems to me to undermine the teacher's authority quite substantially and you know sometimes the ground rules for essay contests and debates and other things they can appear to be arbitrary or they can appear to be strict but that's you know that's just the way sometimes you have lenient teachers and then probably the best teacher I ever had was a one of the best was a first grade teacher who laid down some strict rules and if I violated those rules my parents wouldn't land on the teacher they'd go after me and I just thank you. I'm sorry I missed the last probably 30 seconds of what she said my volume cut off. I was just saying that one of the best teachers I've had laid down strict rules and and I it's inconceivable to me that if I or any other student had violated those rules we'd be given demerits that I but I wouldn't I wouldn't feel like I had the opportunity to just the court she's not being sued she's going to be one of our witnesses and as it concerns how things used to be I would just say there's no way there's no way on god's earth I can convey to y'all what the world is like for an 11 year old right now but she well I thought she was 10 year old when she wrote this right 10 she's 11 now and well you know at this particular time that this is those distinctions are somewhat material because I don't know when young people gain their sexuality or notions of their own sexuality to be able to respond to issues like this but 11 year olds and 12 year olds in terms of women might be but the question is it's not clear that at that early age that discussing sexuality and subjects of sexuality and gender are appropriate when the students can't even haven't even identified their own or experienced their own and so they leave that subject off the table at that subject I think it's a maturity question that they were worried about and I thought that the supreme court in Hazelwood recognized that regulating on on the basis of some level of maturity is an appropriate it's an appropriate thing for a school to do as as as is true with parents then what's the point of what we're doing right now if the teacher can just if the teacher can do whatever they want and their friends I didn't suggest they can do whatever they want because we we have a lot of principles and we're trying to delineate those principles here but the question is whether the school in indicating that the subject matter was not did not fit the maturity level of the class and I think that's the really the bottom line the question was should a court say they're wrong yes have you I mean with all due respect I mean I'm sure you've read the the essay there's it's all about not hurting other people and not judging people for things they do well that's clear that's and that student probably intended that student wrote a bullying paper as the second one but the question is if you have someone who says be kind to all these people and then another student says well these people don't deserve to be kind all of a sudden you got a class discussion on sexuality and the kids are all 10 and 10 years old it's a and the teacher says hold it we're not going to get in this discussion why not why not teach a 10 year old I mean why the thing I don't understand is you know these 10 year olds are these people are seeing everything they want to see on their phone uh I you know I don't know many 10 year olds but I you know I at least know this this young girl rumor and it's not the teacher if you look at the quotes the teacher this the teacher didn't like the viewpoint there's nothing sexual listen Mr. Poston look look it it the thing is we may or I may or may not actually agree with the student's viewpoint but the question is whether the principal is able to make a decision that she believes is best and most age-appropriate for the entire class I would say what I would say the teacher should do that with the supervision of the principal but again that I really think we're just sort of circling around the basic idea when do we when do we teach kids that there are people that identify as transgender when do we teach kids about things they don't know so that they don't freak out when they see well and none of us in this argument are educators we are all lawyers and judges so don't you think it's best left to the educators to make this decision I do I'm okay then I I think it's uh it's best left up to them to a limit because you got to understand what what the heck was the purpose of me going to law school for three years if I don't know if I can't interpret the law better than the teacher can you know I'm saying I I believe in giving the teacher as over the shoulder of the teacher then that's okay but it's the teacher's classroom it's the teacher's curriculum well I mean at least the school I went to is just the same curriculum every year with the different teachers but you understand I mean I hope you understand the idea is the idea is is it's it what we need to figure out or what y'all I mean not we I have no say in but all right do you have anything further Mr. Poston what's that do you have anything further I think your time has expired oh I don't I apologize okay um you have some rebuttal time and um Miss Drain we hear from you oh yes your honor thank you um Jasmine Drain and I'm appearing today in connection with Tom Barlow co-counsel we're representing the defendants appellees Spartanburg school district six and principal Beth Foster and it's a pleasure and privilege to have the opportunity to appear before the panel this morning um it is our position that under Hazelwood the uh the appellants have not and and simply cannot state a violation of the and acceptable to the court I will address the core first amendment issues and defer the remainder of our time for Mr. Barlow to address issues related to qualified immunity and the sua sponte dismissal of the claim against the school district Hazelwood clearly governs the analysis of the speech at issue in this case and up until this morning I it was my understanding that the appellants did not dispute that but appellants have not provided any authority as to why this court should depart from the Hazelwood analysis under Hazelwood a school has the authority to exercise control over the content and style of student speech in school sponsored expressive activities that bear the imprimatur of the school as long as they're reasonably related to a legitimate pedagogical interest and that that's what we're dealing with here I don't think it can be disputed that a compilation of essays that were part of a written classroom assignment and published in a classroom book constitutes school sponsored speech I don't think that issue can be disputed also I think that the record is clear that the principal's actions were clearly related to a legitimate pedagogical interest if you look you know stated in the amended complaint and I believe on on page 17 of the record the concern was she did not think that the topic was appropriate the question was raised you know at what time do we think it's appropriate for students to be or first discussions of sexuality occur in the classroom and I think the court has addressed that by taking the consistent view that then the education of the nation's youth is the primary responsibility of teachers parents and local and state school officials not that of federal judges and I think because of that there has been great different deference given to administrators stated pedagogical interests and concerns I think the Hazelwood court gives us very clear guidance that schools need to be able to account for the emotional maturity level of the intended audience when they are determining what type of school sponsored speech should be given on potentially sensitive topics schools have to be able to ensure that readers are not exposed to inappropriate material that might not be suitable for their age or their level of maturity and then courts have even held that sometimes a school's desire to simply avoid controversial or potentially controversial topics within the school community or a need to dissociate itself with giving the impression that it's sponsoring certain speech satisfies a legitimate pedagogical interest or concern and again that that's exactly what we have here the amended complaint as alleged by the appellants states that the principal told the student's teacher that she reviewed the essays and that the student's essay would not be published because the topic was not appropriate the principal clearly had the authority to condition you know which essays or topics were appropriate for fourth grade consumption and and that's why we believe that the district court correctly concluded that there was not a violation of the student's first amendment rights in any way you know to the extent that there's an argument about there being some type of violation based on viewpoint discrimination it's our position that the district court correctly concluded that Hazelwood does not absent from the complaint or any allegations to suggest that the principal's decision was made on a viewpoint the allegations that are alleged which are expressly denied generally they relate to topic there's no allegations that support that the principal disagreed with the student's position that she had placed in the essay there's no allegations supporting the principal's view and I think most importantly there's no allegations to support that the principal allowed other students to submit topics or write essays concerning sexuality or the lgbtq community which had an opposite view that would be a showing of discrimination based on viewpoint and we simply do not have that in this case and so for those reasons we believe that the district court's ruling should be affirmed in terms of its decision that they're simply the plaintiffs cannot state a violation of the first amendment and if the court has any questions regarding first amendment I'll be glad to to address those at this time otherwise I would like to defer remainder of our time for Mr. Barlow to address issues pertaining to qualified immunity and the sua sponte dismissal of the claim against the school district. All right if my colleagues have no further questions of you at this time I'll ask Mr. Barlow to come forward. Thank you your honor may it please the court I'm Tom Barlow also representing Ms. Foster and Spartanburg school district six I think as far as the qualified immunity second prong of the qualified immunity test under Pearson v Callahan I think my co-counsel has already said that the law is clearly settled but it's clearly settled in our favor in this case under Hazelwood at a bare minimum framing the issue properly should an elementary school principal in 2019 given a split of circuit court authority on the issue and no applicable opinion by the supreme court this court or even any South Carolina district court have known that temporarily excluding an essay addressing LGBTQ issues from a fourth grade class publication would violate students first amendment rights and I think the answer is an obvious no to that question so at a bare minimum that the judge should be affirmed on the the qualified immunity second prong of the Pearson v Callahan test in favor of of Ms. Foster I'll move on to the to the arguments that were raised in in appellant's brief on the district court judges sua sponte dismissal of the claim against Spartanburg school district six as well as Ms. Foster the only citation to that appellants rely on in their brief are rule 41 of the federal rules of civil procedure that that is the only basis for a federal court district court judge to dismiss a complaint on its own motion or sua sponte and clearly that's not the case other rules permit district courts to dismiss actions upon their own motion we cited in our brief right miller federal practice and procedure recognizing that courts can do that under both rule 12 and rule 56 and other citations that we have are two cases where sua sponte dismissals were appropriate under 12b6 if the reason for the dismissal of claims against other parties would lead to the same outcome as as a motion made by a not by a non-moving defendant would have the same outcome as under the underlying basis of the decision on a moving defendant and the purpose of that obviously is judicial economy and efficiency you know if the law is already settled as to one defendant there's no reason to make the other defendants file a rule 12c motion or file their own motion to dismiss if it's a foregone conclusion and the courts apply that provided that there's not any prejudice to the plaintiff from that ruling and we submit that there's no prejudice to appellant here at all had a full chance to argue the merits as part of the first prong of the pearson v callahan qualified immunity analysis they certainly had noticed noticed that we were moving to dismiss the claim on the merits of the first amendment claim while the motion to dismiss was pending a second amended complaint was filed that with again with full knowledge that we were challenging the merits of the first amendment claim the second amendment claim only addressed a state court claim of negligent infliction of emotional distress so a full opportunity to brief both prongs of the callahan test they've made no arguments in the brief only a cursory rule 41 argument the basic legal principle here is the same as to the school district as it was to miss foster if there's no first amendment case on the merits against miss foster there's not one against the school district for the same reasons and the district thank you very much mr barlow thank you your honor all right mr poston do you have some comments in rebuttal i'm muted mr poston do you have some comments you wish to offer in rebuttal yes your honor i'll uh i'll first address mr barlow on the qualified immunity issue the sua sponte dismissal of the claim against the district uh the claim against the district is different than the claim against the principle because our argument of course is that this you know principal foster doesn't get qualified immunity um because she is violating what you know has been so far you know called clearly established uh first amendment rights constitutional rights um which sounds like a very high barrier but in all honesty the supreme court says the contours of the right have to be sufficiently clear that a reasonable official i.e the principal would have to know what she's doing is unlawful and basically that's the situation we have it's it's not the same argument it's the district as an entity is going and alleging violations of the first amendment and we're saying that you know principal foster behaved in a way to where he should not get the protections of qualified immunity and one thing and i know i just despise how in south how in south carolina this qualified immunity law basically it bars and throws out everything in a similar way as the hazelwood case that that they were talking about later we keep i keep hearing people i keep just hearing misinterpretations and i and and with all due respect to opposing counsel i know y'all are intelligent much more experienced than me and you know and you know that you're taking case law and you're sort of manipulating in your favor and that's what we do but what no for instance let's you know for instance as it goes to what i claimed you know the the principal i wouldn't say there that opposing counsel is manipulating anything in their favor you might say that they are arguing the case law in their favor and you can do the same but i don't think you should accuse them of manipulating anything well i'm looking at the 12th paragraph of the amended complaint and i have a couple quotes here from principal foster saying basically look this paper is going to make other parents upset it's not acceptable and it would create an undesirable situation at the school that's three quotes of the four the fourth one is she said you know it's not it's not age appropriate to discuss transgenders lesbians and drag queens outside of so i mean i could you know define manipulate however you want to you know i feel like there's and then when we look at hazelwood it's another catch-all i mean that's the problem when you have a case like this there's you can make any decision you want to based on hazelwood because yes hazelwood said you know the censorship has to be reasonably related to legitimate educational concerns but then they go on and as usual i wish the opinion is more clear but it does say basically that you know the supreme court in terms of their concerns they listed some they said um they want school officials to have the right to censor materials things that are ungrammatical poorly written inadequately researched bias prejudice vulgar or profane and then the very last one it says or unsuitable for immature audiences which from what i could tell has not been defined an 18 year old could be immature they all are pretty much an 11 year old a 10 year old a 14 year old and i just think that really you've got you know they list the reasons and only the very last one did they and and we know that this or unsuitable for immature that's the catch-all that's how if i were if i were on the other side i would say that would be the catch-all because there's no way that i can sit here and define what the court means by immature audiences and so basically the court can just say as it as the district do you think a 10 year old is immature i think everybody's immature mr poston i think we've over this and um i think we appreciate and understand your point all right all right thank you josh all right thank you um i'm going to ask um our courtroom deputy if um she will adjourn court dishonorable court stands adjourned until this afternoon god save the united states in this situation
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Stephanie D. Thacker